Hold on, I'll let everybody settle in. All right, our last set of cases for today are numbers 21-14071, 21-14074, and 22-12909, all styled Compulife Software v. Moses Newman, et al., and we know we have separate appeals by different parties. So Mr. Pan, you may begin. Thank you, Judge Jordan. Good morning, Your Honors. May it please the Court, Jim Pan of Diaz-Royce, on behalf of Appellant Mr. Benjamin Rustin, I refer to his first name Benjamin to distinguish him from a co-appellant, Mr. David Rustin, who is Benjamin's father and represented by my co-counsel, Mr. Golisano. Your Honors, the district court erred in finding Benjamin jointly liable for the conduct committed by co-defendants, which Benjamin did not participate or otherwise involved with. In your view, if there was a basis for liability in any way, how should liability have been apportioned? Well, first, Your Honors, the joint liability for misappropriation of trade secrets is appropriate, whereas the degree of wrong among the tort defenders are the same. And the Court did not compare the degree of wrong among the defendants. Right, right. Now, I understand the argument. Your argument is that given the conduct involved, right, with the use of the license to Benjamin, excuse me, to David Rustin, that joint and several liability could not have been imposed on your client. I get that. Right. And so my question to you is, how do you think, if liability was proper, not joint and several, but liability on the Florida, what is it, the FTSA claim, if liability in any way was proper against your client, how should damages have been apportioned? Like what framework does the district court use to figure out, okay, full damages were to use a broad number, $5 million, right? These three individuals are joint and severally liable for the five, but as to your client, how do you figure out the proportion of harm and responsibility as to the $5 million of loss? Well, Your Honor, my position is Benjamin's fault is zero. It should be anything imposed against him. Right.  I get that. But you started out with joint and several liability, so I'm continuing on that path. And I'm assuming that for that argument that there's some liability. Is that right? Your third argument is, even if there's some liability for my client, he could not have been held jointly and severally liable for the entire amount of damages, right? Is that the argument? The argument is that joint and sever liability, intentional towards claim, there's no apportion of liability. That's my understanding of the rule. So you can say you have a $5 million judgment, you can collect any of them from zero dollars to $5 million. And I think Your Honor's question goes to how much plaintiff should collect from- Sure, but think of a world where, think of a world where what your client did leads to scraping and assuming that that's done by improper means for purposes of my question. What your client does leads to scraping, which causes a million dollars worth of loss. What everybody else does leads to scraping, which causes $4 million worth of losses. What's your client liable for? Maybe contributory negligence or contributory- No, he's found liable. He's found liable for violating the FTSA because of what he did. You have to accept that as a premise of the question, even though that may not be the ultimate result. So how do you apportion? If joint and several liability, as you say, is not appropriate for your client, is there any apportionment available or it's a zero-sum game? You either eat the whole ball of wax or you get off scot-free with zero. I think the latter one. Okay, so it's an all or nothing game for your client. Correct. Like Wellington said at Waterloo, in for a penny, in for a pound. Yes, so why would that be? Judge Jordan's question goes to my question about this. The point of joint and several liability is that you don't do apportionment. The alternative to joint and several liability is apportionment. Why isn't this situation the right situation for joint and several liability? Everyone worked together to cause a single injury. The scripting, Your Honor, if found by the court proper, that was nothing to do with my client. My client had no involvement with the scripting. And he did not use, disclose, or otherwise capitalize on the information took from plaintiff's website. And his wrong found by the district court is he allowed David, his father, to work under his license at AWD, the company, which has nothing to do with the scripting. The scripting was committed by the co-defendants in operating NAIP, which is different from AWD. The NAIP was owned at the time of the scripting by co-defendants, Mr. Aaron Levy. And B&O had no involvement with that organization or website. Yeah, but that doesn't really answer the question. There was only one injury here, right? It wasn't like separate injuries caused by separate defendants. So if not joint and several liability, then what? He should not be found liable. But that's not a damages issue. That goes to whether he should be liable or not. How do you do damages? What do you do with damages? Well, if the district court correctly found joint and several liability, my understanding is that plaintiff can collect the whole amount. That's exactly right. But your argument is that that district court should not have done that, right? Should not find him jointly liable for co-defendant. So what should the district court have found him liable for? Well, the plaintiff may have some claim against AWD for unjust enrichment or something. But B&O merely because mere ownership of a company without more is insufficient to hold the owner liable as the operator of the company absent actual participation in the wrongful conduct. The evidence is clear at trial that he did not participate in the scraping. So that's our position that joint liability against B&O is erroneous. Right. I think if I understand Judge Jordan's hypothetical correctly, we're saying just to assume that your client is found liable. We understand your argument as to that. But let's say you lose on that. Now you've got this $5 million judgment. The description you gave earlier sounds like of the $5 million. If your client was only responsible for a million dollars of that damage, is it your position that your client should only be responsible for paying a million dollars? I don't believe that's the argument I made on the brief. My position is that he should not be found jointly liable for the wrongdoing found by the district court. And if the court affirmed the ruling, I... So your client is conceding that if your client is found liable, your client is expecting to be responsible for the entire $5 million under Judge Jordan's hypothetical? Correct. Okay.  Thank you, Your Honors. Thank you very much, Mr. Pan. You've saved your couple of minutes for rebuttal. Mr. Golisano. May it please the court. My name is Michael Golisano, and I represent the appellants David Rutstein, Moses Newman, and Aaron Levy. I would think that the district court erred here in finding that the scraping under the facts of this case was acquisition by improper means to classify as a misappropriation of a trade secret. Can I ask you to address one thing during the brief time you have, and we may take you over a little bit. So one of the arguments made, and it's only one of them, is that the volume of the data acquired here under these facts, right, wasn't enough to qualify as acquisition by improper means under the FTSA. And my question is, in conducting that analysis, do we look at proportionality, or do we look at raw numbers? In other words, assume the numbers were different. Assume that, because as you point out, right, here there were three, the range is $3 million to 43.5 million quotes out of $63 billion to $913.5 billion, right? But assume it were different. Assume it were $3 to $43.5 billion out of $63 to $913 trillion. Does your argument change or not? It's a proportion game, or it's a net game? I would think it's a proportion. This was on the first appeal where the court said that at some point you must take enough of it. So I don't know where you draw that necessarily, that line, and I don't think we have to decide that today. But under the facts of this case, it's what I came with with these numbers is really about 1% from two zip codes out of 42,000 zip codes. And yes, I guess I would argue that proportionality. So if you take 1% of something, then you can't really say I took the whole thing, 100%. Now, I don't know where you draw that line, Your Honor. It's a good question, a fair point. So I tend to think you're sympathetic towards your argument that scraping in and of itself is not improper means. But though the other side argues that part of the value of the scraping attack was the fact that you had the code that CompuLife had. And so by taking their code and by formatting your sort of separate thing exactly as it had been formatted by them, that gave your scraping value. What do you say about the combination of those two being improper means? Well, that gets into really kind of a whole issue I had with this case about them being consolidated because, yeah, you're right. In the 08 case, the first case, it only involves David Rutstein. There's those findings that, yes, he acquired that code, and I guess combined them. So I understand that argument, and it is pretty damning for David Rutstein to overcome. So it's well taken. I would also address, as counsel mentioned, the joint and several liability. I guess I also have an issue with that as well because really it seems all the allegations in the 08 case, well, he's the only defendant, David Rutstein, and all the allegations were with him, and they're pretty egregious allegations that he misrepresented, made misrepresentations. But then in the 42 case, my clients were just kind of sort of lumped in there. It seems that they took Mr. Newman and Mr. Levy took actions as sort of employees or on the behest of David Rutstein. There was no evidence that they individually benefited in any way, shape, or form. Mr. Newman was hired. He witnessed the scraping incident, which is only damning if we say that scraping is improper means. But if it's not, then all he did was witness this, and then he incorporated that data. And even his big point, of course, he wasn't even paid for that. Now, Mr. Levy. What do you say with the question we were asking via co-counsel? If it's not joint and severable liability, then what is it? I guess it's a hard answer to the question because that's, I guess, what the law says. I would argue it should be more of a proportionality, at least as applied in this case, would seem to be a more equitable remedy. Sort of like, I mean, I know it's not the same because the standards are not the same, and it's a different tort, but sort of like a comparative negligence allocation? I think that, yes, Judge Jordan, I would agree with that. And sort of like on another avenue, they were all acting for David Rutstein. He was the only one that allegedly benefited from this, and he's the one that, under fairness, should be the party liable. Well, they were paid. They didn't make a salary. They didn't, I mean, no monetary benefit whatsoever? No, there was no evidence to that effect. Mr. Newman, he wasn't even paid for the actions for which he's being found liable for. That's unfortunate for him. But he was doing this only at the behest of David Rutstein. And Mr. Levy, again, there was very little evidence on either of these two people, but no evidence that they benefited or were doing anything other than working for David Rutstein and trying to accomplish his goals. All right, thank you. Thank you. Rothman. Good morning, Your Honors. Joel Rothman on behalf of CompuLife, along with my associate Layla Winn. Also in the courtroom is my client, the owner of CompuLife, Robert Barney. May it please the Court. Your Honor, I want to first correct a couple of statements that were made by counsel concerning the underlying facts and what this case, two cases, and Binyamin and David are defendants in both cases, what it was all about. It was all about money. In fact, the evidence demonstrated that the unjust enrichment that the defendants received, all of the defendants, and there was no evidence to the contrary, was, as indicated on page 43 of the district court's decision at document 310, that CompuLife was entitled to recover the unjust enrichments defendants received as a result of misappropriating the trade secrets. $75,819, Mr. McSweeney paid to AWD, which is the insurance agency owned and operated by Binyamin Rutstein, a licensed insurance agent, who determined that he wouldn't supervise the use of his license in essentially he's saying he's negligent in supervising the use of his license and allowed it to be used for this scheme. That $75,819 and $108,406 paid by one resource group, those are commissions. Override commissions is what they're called. They don't get paid to Mr. Rutstein and the rest of the defendants unless there is a licensed agent in order to receive them associated with the organization, and that licensed agent was Binyamin. That licensed agency was AWD. That is why Binyamin is responsible because the testimony was that he gave permission. He testified at his deposition that he gave permission for the use of his license. He didn't control it, and that use continued throughout the period. We're talking about the years 2015, 2016. There is in the record, we have references to all of the commissions that were received and itemization that came out at trial so that the district court was able to make the determination that the commissions from sales of insurance proceeds during the period of time that it used CompuLife's data, those commissions which would not have been paid without Binyamin Rutstein's license were the unjust enrichment damages that plaintiff was allowed to recover. The idea that there has been a factual error with respect to Mr. Rutstein's involvement is simply not the case here. Even if there was some question on a clear error standard of review, there has been no clear error. What do you say on the trade secrets issue? What do you say about the lack of a finding about the percentage? The district court made a finding about how much of the database was taken, but we don't know the percentage. It could have been 1% of the data, 10%. What do you say about that? In terms of the scraping, let's look at what the point of the scraping was. We need enough data to be able to operate the quote engine. That's what we need. And whether it's 3.5 million quotes or 80 million quotes, what was the point of stealing that data? The data was stolen so that it can be put into the defendant's quote engine, and that could be used to entice potential policyholders who did come forward, hire people associated with NAIP, and buy insurance, and then the defendants were paid the insurance commission overrides on those sales. So they accomplished the goal that they were seeking to accomplish, which was to operate their business using CompuLife's data. Judge Newsome, when he decided this court's presidential decision in the first appeal, explained the necessary requirements to the district court, and the district court followed them. Now I'd like to turn, with your honor's permission, to the cross appeal. Because while it may appear at first blush that this is complicated, and Judge Newsome began his decision in the CompuLife first case with a statement, be careful, this gets complicated. But it's actually not that difficult. Where do we start? I suggest that step number one would be to look in the red brief at page 10. What's there? What you'll find in the red brief at page 10, running through page 11 and 12, is a list of the different code sections in CompuLife's HTML code that was registered for copyright. Now, those code sections describe the organization of the code and its arrangement. But they also represent the fact that there are lines and lines of code that were written for each of those sections. Step two, you have to go back and look at this court's decision in Buck. Buck is so critical. Because what happened in Buck? Buck is a case about multiple listings for yachts. And what was the copyright in Buck? Well, the copyright in Buck, if you look at pages starting at 1139 through 1143, the copyright in Buck was for section headings in the multiple listing service. There's even a quote where this court says, the most recent version of the section headings that were presented at trial included accommodations and layout, overview, vessel walkthrough, galley slash laundry, electronics and navigation, electrical system, deck, hull, construction, engine and mechanical equipment, water sports and recreation, fishing equipment, sails and rigging, other features. And a salesman remarks in a disclaimer, that's the entire copyright. Right there. That's it. The selection and arrangement of those specific section headings for a yacht multiple listing service. Now go back to page 10 of our red brief. And what do you see? You see the selection and arrangement of something that doesn't look too dissimilar from Buck. How did we choose to organize the code? We chose to organize it state, then birth month, then birthday, then birth year, then sex, smoker, health, new category, mode used, sort override, base amount, and comp rating. Am I right in reading the district court's decision not to address whether the organization of the code itself was protected? That's right. That's absolutely right. So this issue isn't one that we can really address. It would be one that if we thought that it should have been addressed by the district court, we would remand for that purpose? That's not true. And the answer is in Judge Newsom's decision. Because what happens at the trial is the plaintiff presents evidence, including testimony of its expert, Nancy Miracle, and of its programmer, concerning the selection and arrangement of these code sections. And then, as Judge Newsom said in his decision in CompuLife, it was up to the defendants to meet their burden. How did the court below, with great respect to this district court, obviously since they ruled for us on one issue, how did the district court then deal with whether or not the defendant met their burden? If you look at the district court's decision, what the district court did was cite to argument, not evidence, and Judge Newsom said, defendants, you need to come forward with evidence. And the district court didn't cite to any evidence because the defendants had no evidence that it was not copyrightable, it wasn't original, it wasn't a creative selection and arrangement. They had nothing. The district court then says that the court assessed the source code itself. Well, that sounds very much like what the district court did was not place the burden on the defendants that Judge Newsom told them to do, and then made his own judgment. And that judgment flies in the face of the expert testimony and all of the testimony of the trial. So this is a record. But if it's testimonial in nature, if the evidence is testimonial in nature, isn't Judge Brasher right in suggesting that if you are correct, this needs to go back to the district court? And again, my answer, and I'd ask, Your Honors, to take a look at what the district court cited to as the contrary evidence. Look at what Judge Newsom said. Judge Newsom said the defendants have to come forward. It's their obligation to rebut. And then the district court cites to ECF 306 at 19 to 20. And what is that? That's argument. I get your position, and I'm assuming you're right for purposes of my question. But the district court, for example, isn't required to credit all of your experts' testimony even if it's undisputed. That's true. The district court might say, you know, I buy 70. As a finder of fact, I buy and credit 70% of that testimony, but I'm not willing to go to 100%. And that may or may not affect how the copyright infringement claim ultimately plays out. Right. And that's true, Judge Jordan. But on this record, when we have the plaintiff demonstrating validity and there is no evidence contrary, no evidence offered whatsoever by the defendant to meet their burden at all, what would there be for the district court to assess on remand? The judge below indicated, I've looked at this. What is this? 306 at 19 to 20. What's there? Nothing but argument. And then I've made my own review, and then in complete contradiction to what Judge Newsom ordered, determines, well, you know, I'm filtering it all out. But that's not filtration. That's basically tossing it away. Let me ask you a practical question about this. What do you get from the copyright claim that you don't already have from the trade secrets claim? Well, on one hand, Judge Brasher, it's very important to my client that my client have a valid copyright. I do not necessarily disagree with you at all that in terms of an additional remedy. It's the same injury, right, whether it's copyright or trade secrets. It really is, and, you know, you can argue statutory damages. Maybe you can get willfulness. It's a single work. The most you could get was $150,000. You can argue, and there's plenty of cases where there's a trade secret injury and a copyright injury, and they're distinguishable, and so maybe you get both. I don't disagree with you that the additional remedy is not of great significance. But one thing is certainly clear, and that is that this is original copyright, original work that is so much more involved and so much more detailed than in Buck, and yet when it came down to actually doing the job of making a determination, remember what copyright is ultimately? What is it? I see my time is up. Go ahead and finish, and then I think we have time for questions. There's a term that's used called crude, humble, and obvious. Even something crude, humble, and obvious would be entitled to copyright protection. It's also the name of a band that plays at copyright society events, right? So what is this code, crude, humble, and obvious? Yes, but it's protectable, and it's certainly more complicated than Buck, and it should not have been filtered out and discarded. Yes, Ron, I'm sorry. No, I have a question back to the trade secrets, and I was really thinking about counsel's representation regarding Mr. Newman and Mr. Levy because it does seem that they were kind of low on the totem pole, and it seems like they're being presented as innocent bystanders. Paragraph 51 of the district court's order, contrary to what counsel said, does find that Mr. Newman made some money off of this process, but I'm just curious what evidence was in the record to find those two individuals liable. Mr. Newman, in the second case, was the one who wrote the new code, handled the scraping, handled the integration of the scraping into the new website to show all the scraped quotes. But is it unreasonable to conclude or infer, as counsel suggests, that he really didn't know what he was doing? No. He was just following directions in both of them, perhaps? No, not at all. He testified at trial. He testified at deposition before that. He testified at the first trial. He didn't say, I didn't know what was going on. He knew what was going on, and he admitted, with regard to the scraping, his greatest quote was, no one wants to be scraped. He knew what he was doing, and he was paid for it. And, yeah, I think maybe Mr. Rutstein stiffed him for some of what he owed him, but they were all in it to make money, and the money they made, the $180-some-odd thousand of unjustly enriched that enriched their pockets, was the basis for my client's damages. Okay, thank you. All right, thank you very much. Your Honors, I'll leave my co-counsel to address the two secret issues, so I focus on the copyright raised by Mr. Rothman. In determining legal copying of computer code, source code, there's no requirement for determining the arrangement and organization of the code. There are three steps in determining legal copying in that context. Actually, in the first step, obstruction. You need to break down the code into its constituent structural parts. And in the second step, you examine each code, each part. If it's not protectable, you exclude it. If it's protectable, you leave it there for the third step, which is only comparing the protectable portion of the code with the allegedly infringing product. And actually, in the first appeal, this court observed that some elements of computerized code are unprotectable and indeed are so obviously so that no proof is necessary. It is clear, Your Honors, that some of the, part of the code has to be excluded in determining the third step, the comparison. And as to counsel's argument that our defendant failed to present evidence to show a nine out of the 11 selection code not protectable, the court, district court, expressly rejected that argument. Found that defense counsel elicited testimony from computerized representative Mr. Chris Berner and their expert witness. And even assuming that there was no evidence, that in and of itself would not render the district court finding reversible. And this court also observed in the first appeal that regarding defendant's burden of proof unprotectable elements of the code stated that that is not to say that the defendant must always introduce evidence in order to enable the district court to filter. The defendant may demonstrate by argument alone that an element of copyrighted work is unprotectable. So the plaintiff, Compute Life, did not meet this burden to establish actionable legal copying by defendants. So this court should affirm the judgment in favor of defendants on the copyright issue. Was he mad? Thank you, Your Honors. Your Honors, counsel mentioned that, in fact, there was this corporate entity involved, AWD. And that just goes back into this argument about the joint and several liability, why these low level employees, Mr. Newman and Mr. Levy, are being held personally liable without even, I don't know why AWD wasn't named as a defendant, but that's the entity that received $180,000, not Mr. Newman or Mr. Levy. And Mr. Levy knew what he was doing, as counsel said. But again, that gets back to the position that scraping is 25% of internet traffic and that is a normal thing that's used every single day. He doesn't necessarily think he was doing something wrong. Yeah, he said nobody wants to be scraped, of course. And that's why most websites implement reasonable security features, which the plaintiff did not, such as username and password or just blocking. You can actually block scrapers completely through a few lines of code. And none of that was done here. In terms of the volume of the data that was taken, I know counsel said, oh, it was enough. It was enough for them. But was it? I was really, the thing that made no sense to me is I don't get what the utility was of if I search and I'm only getting data from two zip codes. And if I'm in any other zip code, then it was worthless. I guess it just worked functionally, but it doesn't seem like there was any value with it. It seems the money was made, really, again, going back to the 08 case, because that required the underlying source code. So there were the issues there. But I think we've established some errors in the analysis for the trade receipts of misappropriation that would warrant a reversal on that count. And secondarily, some issues here with this joint and several liability that's not necessarily appropriate in this case. And if there's no questions, then I thank you, honors. Thank you. All right, thank you all very much. Yeah, yeah. Yeah. No, no, that's OK. You can stay there. We don't have to. We don't have to brief something. OK, last one today is number 22-3.